## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | Case No. 19-20036-JAR |
| **ANTHONY STOKES** | |
| **Defendant.** | |

### PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney, D. Christopher Oakley, and Anthony Stokes, the defendant, personally and by and through his counsel, Timothy Burdick, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1.      **Defendant's Guilty Plea.**  The defendant agrees to plead guilty to Counts One and Six of the Indictment.  Count One charges a violation of 21 U.S.C. § 841, that is, distribution of a controlled substance.  Count Six charges a violation of 21 U.S.C. § 331(i)(3), that is, distribution of a counterfeit drug.  By entering into this Plea Agreement, the defendant admits to knowingly committing the offenses, and to being guilty of the offenses.  The defendant understands that the maximum sentence which may be imposed as to Count One of the Indictment to which he has agreed to plead guilty is not more than 20 years of imprisonment, a $1,000,000 fine, not less than 3 years of supervised release, and a $100.00 mandatory special assessment.  The maximum penalty for Count Two of the Indictment to which he has agreed to plead guilty is not more than 3 years of imprisonment, a $10,0000 fine, not more than 1 years supervised release, and a mandatory

$100.00 special assessment.  The defendant further agrees to not to contest the forfeiture of certain property or money to the United States, as set forth below.

2.      **Factual Basis for the Guilty Plea.**  The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

In November 2018, an agent with the Food and Drug Administration Office of Criminal Investigation  (FDA-OCI) identified an online vendor with the username "killwill" offering "pressed" Oxycodone 30mg tablets for sale on the Dream Market (an online "dark web" market). The dark web vendor, "killwill" offered to sell "pressed" Oxycodone 30mg tablets in quantities from 1 to 1000 tablets.  Killwill's advertisement indicated that his accepted form of payment was Bitcoin.

On December 3, 2018, an FDA-OCI special agent, while acting in an undercover capacity (hereinafter "UC"), purchased 20 Oxycodone (pressed) pills from "killwill" on the Dream Market.  UC paid "killwill" $280.80 plus $30 shipping for a total of $310.30 using an undercover bitcoin account.  On December 4, 2018, a United States Postal Service Priority Mail Express parcel was delivered to the undercover mailbox located in Kansas City, Kansas.  The parcel was mailed from the Amherst, Massachusetts Post Office on December 3, 2018, and contained 22 small round blue pills bearing "M" on one side and "30" on the other.  The pills were logged as evidence at the FDA Kansas City Field Office and sent to the Forensic Chemistry Center (FCC) for analysis.  The FCC determined the pills were not consistent with authentic oxycodone and that the pills actually contained fentanyl and heroin. The weight of the pills was 1.9637 grams.  Mallinckrodt Pharmaceuticals sells legitimate oxycodone pills and owns the "M" mark that was counterfeited on the pills.  Mallinckrodt Pharmaceuticals did not give anyone permission to produce the pills sold by Stokes.  The pills were therefore a counterfeit drug as defined at 21 U.S.C. § 321(g)(2).

UC continued to make undercover purchases from "Killwill" until around June 10, 2019.  The counterfeit pills were mailed via USPS Priority Mail.  Agents obtained video from USPS that showed Stokes mailing the pills on three separate occasions.  Stokes' girlfriend was observed mailing the counterfeit pills on one other occasion.

On April 23, 2019, UC received a message from WILLKILL99 on Wickr, which is a messaging application.  WILLKILL99 offered to sell UC pills directly through Wickr since they previously did business together on the dark web.  On that occasion UC agreed to purchase 55 pressed pills in exchange for $630 worth of bitcoin.

On April 24, 2019, agents established physical surveillance in the area of Stokes' last known address, in South Deerfield, MA.  A silver Toyota 4-Runner known to be driven by Stokes' girlfriend and a silver Ford F-150 known to be driven by Stokes were parked in the driveway.  Agents observed Stokes, driving the F-150

2

leave the residence and drive to another location where Stokes picked up JM. Stokes and JM drove directly to a warehouse in South Deerfield, MA. Agents saw Stokes and JM enter the warehouse. A few hours later, Stokes' girlfriend arrived driving the silver Toyota 4-Runner. Stokes' girlfriend entered the warehouse and ten minutes later, Stokes and the other two individuals left the warehouse in the F-150.

Later that evening, special agents accessed the unlocked garbage dumpster located in the parking lot next to the warehouse. Inside the trash agents found several garbage bags and a cardboard box were removed and transported to the South Deerfield Police Department where they were sorted. The cardboard box was approximately 12" x 24" in size and one end was open. A shipping label for Anthony Stokes, at his residence, was attached to the bottom. Several items were located inside the open box. These items included several pairs of rubber gloves, 2 surgical masks, several wet napkins with blue color on them, and a piece of white printer paper with blue color and a handwritten list. The blue color on the wet napkins and paper was consistent with the color of counterfeit oxycodone pills received during this investigation. The handwriting appeared to be an ingredient list for manufacturing the counterfeit pills with the number "400" circled at the top. Items obtained from the trash were submitted to the FDA forensic laboratory. The laboratory identified fentanyl and heroin on six items from the trash, including the napkins/paper towels and masks.

On June 11, 2019, federal law enforcement officers executed search warrants at the warehouse in South Deerfield, Stokes' residence in Greenfield, MA, and JM's residence. At the warehouse, agents found a pill press, along with USPS labels and tracking numbers. Agents found counterfeit oxycodone pills, $4202 in cash, a vacuum sealer, USPS labels and tracking numbers at Stokes' residence. Stokes' girlfriend, who was at Stokes' residence when the search warrant was executed, was found by law enforcement officers in the bathroom flushing a white substance down the toilet. Stokes, his girlfriend, and another person ("JM") each conspired to sell the counterfeit pills that Stokes and JM pressed using pill presses.

3.        **Application of the Sentencing Guidelines.** The parties request that the Court apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to

the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines.  The parties agree that the Court will determine the final Guideline range.  The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4.      **Relevant Conduct.**  The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5.      **Government's Agreements.**  In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

(a)      to dismiss the remaining counts of the Indictment at the time of sentencing;

(b)      to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment;

(c)      to recommend a sentence at the low end of the applicable Guideline range, provided that the defendant does not request a downward departure or a variance; and

(d)      to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility.  In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because he timely notified the government of his intention to enter a plea of guilty.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility.  If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct,

the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings.  The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6.     **Sentence to be Determined by the Court.**  The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge.  The United States cannot and has not made any promise or representation as to what sentence he will receive.

7.     **Forfeiture of Assets.**  The defendant knowingly and voluntarily agrees not to submit a claim or otherwise contest forfeiture concerning, any property that is the subject of civil forfeiture in District of Kansas case 20-CV-1137-KHV-KGG.

8.   **Identification of Assets and Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments) and Forfeiture.** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

(a)   Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change.  Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns.  The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case.  Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

(b)   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information.  Defendant agrees the United States Attorney's Office may subpoena any records it deems relevant to conduct a full financial investigation.  Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

(c)   Defendant agrees to submit to an examination prior to and/or after sentencing, which may be taken under oath, and/or may include a polygraph examination.

(d)   Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office.  All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

(e)   Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(f)   Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable immediately and subject to immediate enforcement by the United States.  Should the Court impose a schedule of payments, he agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.  If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate

Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(g)     If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(h)     Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(i)     Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(j)     Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(k)     Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(l)     Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

9.     **Withdrawal of Plea Not Permitted.**  The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

10.     **Payment of Special Assessment.**  The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing.  The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing.  The defendant has the burden of establishing an inability to pay the required special assessment.  The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

11.     **Waiver of Appeal and Collateral Attack.**   The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release.   The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed.   The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b).   In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a).   Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12.     **FOIA and Privacy Act Waiver.**  The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13.     **Full Disclosure by United States.**  The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning his background, character, and conduct, including the entirety of his criminal activities.  The defendant understands these disclosures are not limited to the count to which he is pleading guilty.  The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement.  The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14.     **Parties to the Agreement.**  The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15.     **Voluntariness of Guilty Plea.**  The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided.  Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion.  The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties.  The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty.  He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

*D. Christopher Oakley*

Date: _____2/19/21_____

D. Christopher Oakley
Assistant United States Attorney
500 State Avenue
Kansas City, KS  66101
Ph. 913-551-6730
Fax 913-551-6541
Chris.oakley@usdoj.gov
Ks. Bar No. 19248


s/ *Scott C. Rask*

Date: ___February 18, 2021___

Scott C. Rask , #15643
Assistant United States Attorney
Supervisor


s/ Anthony Stokes

Date: _____02/21/21_____

Anthony Stokes
Defendant


s/ Tim Burdick

Date: _____02/21/21_____

Timothy Burdick
Assistant Federal Defender
500 State Avenue
Kansas City, KS
Tim_Burdick@fd.org
Ph. 913-551-6712
Ks Bar No. _____
Counsel for Defendant